# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 22-0615V**

| | |
|---|---|
| JENNIFER CALLAGHAN,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: October 19, 2026 |

*Amy A. Senerth, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Madylan Louise Yarc, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT[1]

On June 3, 2022, Jennifer Callaghan filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that that she suffered a shoulder injury related to vaccine administration ("SIRVA") resulting from an influenza ("flu") vaccine received on October 21, 2020. Petition at 1.

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I find the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Respondent contested Petitioner's entitlement to compensation (ECF No. 28), and the parties have now briefed the matter (ECF Nos. 31, 34). For the reasons set forth below, I find that the evidence of record preponderantly establishes that Petitioner likely suffered from residual effects of her condition for more than six months; that her shoulder pain likely began within 48 hours of vaccination; and that she has preponderantly satisfied the remaining Table SIRVA elements and other statutory requirements. She is therefore entitled to compensation.

## I. Relevant Factual History

### A. Medical Records

Petitioner received a flu vaccine in her left deltoid on October 21, 2020. Ex. 1 at 117. Three weeks later (November 11, 2020), she saw her primary care provider ("PCP") via telehealth, reporting a three-week history of left shoulder pain. Ex. 3 at 51. She explained that she had received a flu vaccine and now was experiencing severe pain and could not lift her arm. *Id*. She was assessed with shoulder pain and referred for an orthopedic consult, with over-the-counter medications and stretching recommended for pain. *Id*. at 52. On November 13, 2020, Petitioner's endocrinologist prescribed oral steroids. *Id*. at 79.

Two months later (January 19, 2021), Petitioner saw an orthopedist for evaluation of "pain and loss in [range of motion] in left shoulder that began 10/2020 after having a flu vaccine." Ex. 2 at 17. She explained that she had received a flu vaccine in her left shoulder "at the end of October," and that evening began developing increasing pain and difficulty moving her shoulder. *Id*. at 18. When she awoke the next day, she was in significant pain and her range of motion ("ROM") was restricted. *Id*. She had taken oral steroids and done exercises at home, and her ROM was now significantly better than it previously had been. *Id*. On examination, her left shoulder ROM was limited and painful. *Id*. at 19. The orthopedist noted that Petitioner exhibited "a bit of frozen shoulder," as well as signs consistent with bursitis *Id*. at 20-21. He recommended that she continue home exercises. *Id*.

On April 14, 2021 – nearly six months after Petitioner alleges her pain began, but three months after her last shoulder treatment – Petitioner saw her PCP for a yearly physical examination. Ex. 3 at 44. The review of symptoms portion of the record for this visit states that she denied muscle aches and painful joints. *Id*. at 46. She also did not report any problems with her left shoulder, and her musculoskeletal system was noted as "normal" on examination. *Id*. at 47. She reported exercising on a Peloton three times a week. *Id*. at 44.

Petitioner saw her PCP for unrelated acute problems on August 9 and 18, 2021. Ex. 3 at 33-43. The records of these visits do not document any complaints concerning her left shoulder, and no musculoskeletal examinations were performed. *Id*.

Petitioner returned to the orthopedist on October 19, 2021 for a follow-up evaluation of her left shoulder pain. Ex. 2 at 10. She had done the recommended home exercises regularly in the beginning, resulting in improved ROM. *Id*. Over time, she had been doing the exercises less, and now "occasionally still has pain in her shoulder," particularly with working out in the gym and yoga. *Id*. She was due to receive another flu vaccine, and wanted to discuss treatment options because she was "concerned about developing a *worsening* frozen shoulder." *Id*. (emphasis added). On examination, her ROM was "equal in both shoulders" both actively and passively, though she experienced pain with passive external rotation forward elevation of the left shoulder "consistent with capsular irritation." *Id*. The orthopedist noted Petitioner "still has some mild pain within the shoulder joint itself" that he thought was consistent with synovitis and capsulitis, rather than rotator cuff dysfunction. *Id*. at 11. They discussed trying a steroid injection "to decrease the inflammation in her shoulder," and Petitioner received the injection that day. *Id*.

Petitioner returned to her PCP on November 10, 2021. Ex. 3 at 29. She did not mention any concerns about her left shoulder, and no musculoskeletal examination was done. *Id*.

### B. Testimonial and Other Evidence

Petitioner filed a declaration in support of her claim. Ex. 4. She states that she experienced pain immediately after vaccination, and that it became "unbearable" that first night. *Id*. at ¶ 4. When she saw an orthopedist in January 2021, she told him that she was being cautious in group settings due to COVID-19, and he recommended that she treat her shoulder with only home exercises. *Id*. at ¶ 5.

Petitioner asserts that her pain persisted during the treatment gap between January and October 2021. Ex. 4 at ¶ 6. During this time, she could not fully extend her arm, and experienced pain daily. *Id*. The cortisone injection she received in October 2021 helped with the pain for a few months, but the pain returned in February 2022. *Id*.

## II. The Parties' Arguments

Petitioner contends that she suffered residual effects of her left shoulder injury "for well over six months" after vaccination. Motion for Ruling on the Record, filed July 1, 2025, at *8 (ECF No. 31) ("Mot."). She emphasizes that meeting this requirement does not require continuous medical treatment or debilitating symptoms; rather, the focus is on the persistence of symptoms, however mild. Mot. at *7-8.

Although Petitioner did not mention shoulder symptoms during a wellness examination in April 2021, or during August 2021 PCP visits, that does not necessarily mean that her symptoms had resolved by this time. Mot. at *9. And she contends that her return to the orthopedist (when she complained of ongoing left shoulder pain in October 2021) supports her position. *Id*. She adds that using a Peloton three times a week "is not inconsistent with a shoulder injury in recovery, especially one characterized by intermittent pain, such as bursitis or frozen shoulder." *Id*.

Concerning onset, Petitioner emphasizes that she consistently reported that her symptoms began on the evening of vaccination. Mot. at *10. She told the orthopedist in January 2021 that her pain began the night of vaccination, becoming more significant by morning. *Id*. And she reported severe arm pain for "about three weeks" to her PCP in November 2020. *Id*. at *10-11.

Respondent argues that the record demonstrates that Petitioner experienced left shoulder pain until January 19, 2021 – over three months short of the six-month mark. Response, filed Aug. 21, 2025, at *7 (ECF No. 34) ("Resp."). Thereafter, she saw her PCP three times without reporting shoulder pain. Resp. at *7. At her April 2021 wellness examination, she reported using a Peloton three times a week and denied muscle aches or painful joints. *Id*.

Although Petitioner returned to the orthopedist in October 2021 after a nine-month gap, Respondent observes that "[t]here is no indication in this record that [the orthopedist] believed petitioner's pain was the *same pain* petitioner complained of nine months prior." Resp. at *8. And Respondent asserts that the reason for this visit was that Petitioner was concerned about developing a worse frozen shoulder when she received a flu vaccine that year. *Id*.

Respondent argues that the record preponderantly supports a finding that Petitioner's pain persisted only until January 19, 2021. Resp. at *9. Respondent contends that if Petitioner's symptoms continued thereafter, she could have, and likely would have, mentioned it to her PCP during her three intervening visits. *Id*.

Respondent further points out inconsistencies between Petitioner's declaration and the medical records. Resp. at *9. For instance, Petitioner's declaration asserts that between January and October 2021, she experienced pain on a daily basis; however, she told the orthopedist she experienced only "occasional" pain during yoga and exercise. *Id*. Respondent adds that Petitioner's declaration, signed in May 2022, asserted continuing symptoms in February 2022 and that she planned to seek additional care – but that she has not field any records documenting care since December 2021. *Id*. at *10.

Additionally, Respondent argues that Petitioner has not preponderantly established that her shoulder pain began within 48 hours of vaccination. Resp. at *11. At her first treatment visit, she reported pain for "about three weeks," suggesting that she

could not provide a precise onset date. *Id*. Although Petitioner later reported to the orthopedist that her pain began the evening of vaccination, Respondent argues that this is less persuasive because the symptoms reported at this visit are not consistent with those at the first visit, and this appointment is "less contemporaneous." *Id*. at *12.

## III. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must preponderantly demonstrate all matters required under Section 11(c)(1), including the factual circumstances surrounding his or her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11-685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

In addition to requirements concerning the vaccination received and the lack of other award or settlement,[3] a petitioner must establish that he or she suffered an injury

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception and has not filed a civil suit or collected an award or settlement for his or her injury. Section 11(c)(1)(A)(B)(E).

meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he or she received. Section 11(c)(1)(C). The Vaccine Act further includes a "severity requirement," pursuant to which a petitioner demonstrate that they:

> (i) suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine, or (ii) died from the administration of the vaccine, or (iii) suffered such illness, disability, injury or condition from the vaccine which resulted in inpatient hospitalization and surgical intervention.

Section 11(c)(1)(D).

"[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) ("a discharge from medical care does not necessarily indicate there are no residual effects"). "A treatment gap . . . does not automatically mean severity cannot be established." *Law v. Sec'y of Health & Human Servs*., No. 21-0699V, 2023 WL 2641502, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2023) (finding severity requirement met where petitioner sought care for under three months and had met physical therapy goals but still lacked full range of motion and experienced difficulty with certain activities, then returned to care nearly five months later reporting stiffness and continuing restrictions in motion); *see also Peeples v. Sec'y of Health & Human Servs.*, No. 20-0634V, 2022 WL 2387749 (Fed. Cl. Spec. Mstr. May 26, 2022) (finding severity requirement met where the petitioner sought care for four months, followed by fifteen-month gap); *Silvestri v. Sec'y of Health & Human Servs*., No. 19-1045V, 2021 WL 4205313 (Fed. Cl. Spec. Mstr. Aug. 16, 2021) (finding severity requirement satisfied where petitioner did not seek additional treatment after the five-month mark.

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the

> upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time-frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g*. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

## IV. Ruling on Entitlement

### A. Severity Requirement

The record in its entirety *barely* supports the conclusion that Petitioner's left shoulder pain likely persisted for more than six months post-vaccination. Petitioner sought treatment for her shoulder pain until approximately three months after the onset of her condition. Thereafter, she did not seek care for her shoulder for nine months. In the interim, she saw her PCP three times, including an annual examination (close-in-time to the six-month mark) documenting a normal musculoskeletal examination. This

examination finding weighs against a finding that Petitioner's symptoms had not resolved at that time.

However, when Petitioner returned to the orthopedist in the fall of 2021, she reported that she occasionally still experienced pain, and wished to discuss treatment options to avoid a *worsening* of her frozen shoulder when she received another flu vaccine that year. Ex. 2 at 10. She noted that the problem had persisted over time (despite the absence of treatment). Furthermore, on examination, although her ROM was normal, her orthopedist noted pain with passive external rotation forward elevation that was *consistent with capsular irritation*. *Id*. And he offered a steroid injection "to decrease the inflammation in her shoulder" – suggesting that she suffered from persisting inflammation. *Id*.

The October 2021 orthopedist record thus supports a finding that Petitioner's shoulder symptoms continued to that date – although on a much milder, intermittent basis. The lack of documentation of shoulder problems at her April 2021 wellness examination is consistent with an injury that had not fully resolved, but was causing only intermittent symptoms. *See, e.g., Alsip v. Sec'y of Health & Human Servs*., No. 21-1815V, 2023 WL 3060573, at *5-6 (Fed. Cl. Spec. Mstr. March 22, 2023) (finding severity requirement met where claimant's condition was "substantially resolved" after a second steroid injection three months after vaccination, but thereafter she continued to experience residual effects in the form of mild and intermittent symptoms, but noting that the mildness and intermittent nature of her symptoms "are issues highly relevant to damages").

Petitioner's lengthy treatment gap does not prevent a favorable severity finding. It does, however, bear heavily on damages, suggesting that she experienced a prolonged period of time where her symptoms were mild and intermittent. And her treatment course was conservative and limited. Any pain and suffering award will be accordingly modest in magnitude.

### B. Onset

The record supports the conclusion that Petitioner likely experienced the onset of shoulder pain within 48 hours of vaccination. Petitioner first sought treatment for shoulder pain three weeks after vaccination, reporting a three-week history of pain associated with vaccination. Ex. 3 at 51. She told her orthopedist that her pain and limited ROM began in October 2020 (the month she received the vaccine) after vaccination. Ex. 2 at 17. Petitioner has testified that she experienced pain immediately after vaccination that became "unbearable" that night. Ex. 4 at ¶ 4. And no evidence suggests a later onset.

### C. Factual Findings Regarding QAI Criteria for Table SIRVA and Other Entitlement Requirements

Respondent does not contest the remaining SIRVA Table elements and statutory requirements, and I find that they are preponderantly satisfied. Petitioner experienced limited shoulder ROM, and her symptoms were limited to her shoulder. Ex. 2 at 19. The

record does not contain preponderant evidence that she had a history of pain, inflammation, dysfunction, or another condition, that would explain her post-vaccination symptoms. Ex. 3. Petitioner received a covered vaccine in the United States. Ex. 1 at 117. And she states that she has never received an award or settlement for her vaccine-related injuries, nor has she filed a civil action. Ex. 4 at ¶ 9. Thus, Petitioner is entitled to compensation.

## Conclusion

Based on my review of the record as a whole, I find that it is more likely than not that Petitioner experienced residual effects of her vaccine-related injury for more than six months and that the onset of her shoulder pain likely occurred within 48 hours of vaccination. I also find that all remaining SIRVA Table and QAI requirements are preponderantly met, as are all statutory requirements for entitlement. **Therefore, I GRANT Petitioner's motion (ECF No. 31) and find that Petitioner is entitled to compensation**.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master